1   **WO**

2

3

4

5

6           IN THE UNITED STATES DISTRICT COURT

7           FOR THE DISTRICT OF ARIZONA

8

9

10   Randall R. Ratachie,

11              Plaintiff,                    No. CV-11-01351-PHX-PGR

12        vs.

13   AmeriCredit Financial Services, Inc.,              ORDER

14              Defendant.

15

16           Pending before the Court is defendant AmeriCredit Financial Services, Inc.'s

17   Motion to Dismiss Second Amended Complaint (Doc. 16).  Having considered the

18   parties' memoranda, the Court finds that the motion should be granted in part and

19   denied in part.[1]

20   <u>Background</u>

21           The plaintiff's First Amended Complaint ("FAC") was dismissed in its entirety

22   with leave to amend pursuant to Fed.R.Civ.P. 12(b)(6) in an order entered on March

23

24   _____
           [1]

25           Neither party requested a hearing on the motion to dismiss and the Court
     concludes that oral argument would not aid the decisional process.

26           The Court notes that it has intentionally not discussed every argument
     raised by the parties and that those arguments not discussed were considered by
     the Court to be unnecessary to the resolution of the pending motion.

20, 2012 (Doc. 13), 2012 WL 933011 (D.Ariz. March 20, 2012).  The plaintiff filed his Second Amended Complaint ("SAC") on April 23, 2012; the SAC included some additional factual allegations, and deleted some factual allegations that had been included in the FAC.

According to the allegations in the SAC, the plaintiff was hired by the defendant as a collector and customer service representative on September 11, 2006.  The plaintiff was the only individual employed by the defendant on the plaintiff's team who was over the age of 40.  Beginning in September 2008, the plaintiff began documenting various incidents that were occurring at his workplace related to his age and work activities.  On December 12, 2008, the plaintiff reported his concerns to the defendant's human resource department ("HRD"), providing it with 12 different points of age discrimination.[2]  During a subsequent meeting with HRD, the plaintiff was assured that his job was safe and that his supervisor, Kirk Robinson, could not fire him without a HRD representative being present.  The plaintiff thereafter documented additional acts that he felt were indicative of age discrimination; the only act specified was an incident in September 2009 in which his supervisor ordered him alone back to work while he was taking a donut break with

---

[2]

Paragraph 12 of the SAC states in its entirety:

12.  The 12 points of age discrimination included allegations that employees of Defendant were routinely making insulting comments about older male employees to Plaintiff; Plaintiff was prohibited from accessing certain websites younger employees were allowed to access during break periods; Plaintiff was put on a strict overtime regimen when other employees were not; Plaintiff was written up for performance deficiencies when others who had committed the same deficiencies were not; and Plaintiff was required to report to a Team Leader while other younger employees were not.

his teammates.[3]  He reported the incident to Grace Mininberg of HRD and vice-president Marie David-Thompson who investigated the incident; the results of the investigation determined that the supervisor was wrong to single out the plaintiff and that she had meant for the whole team to get back to work but that only plaintiff obeyed.[4]  On an unspecified date, Robinson asked the plaintiff's group "who likes to work hard," and when the plaintiff responded by raising his hand, Robinson told him that "working hard is 'old-school' and that in this day and age people work smarter."[5]  In October 2009, the plaintiff made a suggestion to Terrence Faison, whose role with the defendant is unspecified, about using an alternative method to attempt collections on accounts, and Faison responded that they wouldn't be using the plaintiff's "old-school" ways and that the current ways were working just fine.[6]  On some unspecified date, the plaintiff was given a written reprimand for doing work on the wrong computer queue while his teammates were not reprimanded or written up for working in the wrong queue.[7]  In November of 2009[8], the plaintiff received a

---

[3]

Paragraph 14 of the SAC states: "Specifically, in September of 2009, Ingrid Doty, a supervisor of Plaintiff, prevented Plaintiff from socializing and enjoying a donut break with his teammates.  Ms Doty singled out Plaintiff and instructed him that he was required to get back to work, stating "Randall, we need you on the phone now."

[4]

Paragraph 15 of the SAC.

[5]

Paragraph 16 of the SAC.

[6]

Paragraph 17 of the SAC.

[7]

Paragraph 18 of the SAC states in its entirety: "Plaintiff was given a written reprimand for doing work out of the wrong computer queue. On or about October 10,

1  written reprimand for arguing with a customer when other team-members were not

2  reprimanded for arguing with customers.[9]  In December 2009, the plaintiff went on

3  a three-week pre-approved vacation and returned to work on December 28, 2009.

4  He was terminated from his employment that same day by Robinson and Faison

5  without any specific explanation and without any HRD personnel being present.[10]

6  On January 4, 2010, the plaintiff filed an administrative Civil Rights Complaint

7  with the Arizona Attorney General's Civil Rights Division ("ACRD") through an online

8  intake form.   He alleged in that form that the defendant had subjected him to

9  allegations of retaliation, age discrimination, and potential racial discrimination.  On

10  _____

11  2009, fellow team-members of Plaintiff were instructed by their supervisors that it did
not matter which queue they were working from, as long as the work was getting
12  completed.  No other team-members were reprimanded or written up for working in
the wrong queue."

13  [8]

14  While the SAC alleges this incident occurred in November of 2010, the
Court presumes that the 2010 is a typographical error.

15  [9]

16  Paragraph 19 of the SAC states in its entirety: "In November of 2010 [sic]
Plaintiff received a written reprimand regarding an alleged customer complaint, The
17  complaint alleged that Plaintiff was arguing with the customer. Plaintiff observed
other team-members using the same language with customers and they never have
18  received a reprimand. Additionally, other team-members did not receive reprimands
19  over customer complaints."

20  [10]

Paragraph 20 of the SAC states in its entirety:

21  20.  In December, 2009, Plaintiff went on a three-week pre-approved vacation.
22  He returned to work on or about December 28, 2009, at 11:30 am as
scheduled.  Kirk Robinson and Terrance Faison, the two individuals Plaintiff
23  complained about most, called Plaintiff into the office where he was
terminated.  When pressed for a reason, Mr. Robinson informed Plaintiff "you
24  know that we've had our problems in the past, here's a paper that explains
some of your rights."  Grace Mininberg, Marie Davis-Thompson, nor any
25  other HR representative was present, as promised to Plaintiff in his first
26  meeting with HR.

1   June 23, 2010, the plaintiff filed an administrative Charge of Discrimination with the

2   ACRD wherein he alleged that "I believe and therefore allege that but for my race,

3   Caucasian, and my Age 64; [sic] I would not have been subjected to a hostile work

4   environment and terminated from my employment."  The charge did not mention

5   retaliation.  As a result of the work-sharing agreement between the ACRD and the

6   United States Equal Employment Opportunity Commission ("EEOC"), the plaintiff's

7   ACRD charge was also considered filed with the EEOC.  The ACRD mailed a Notice

8   of Right to Sue to the plaintiff on March 18, 2011.

9       The plaintiff timely commenced this action in the Maricopa County Superior

10  Court on June 15, 2011, and it was removed by the defendant on the basis of federal

11  question jurisdiction on July 7, 2011.  The SAC raises six claims for relief: intentional

12  infliction of emotional distress (Count I); negligent infliction of emotional distress

13  (Count II); age discrimination under the Age Discrimination in Employment Act

14  ("ADEA"), 29 U.S.C. § 621 *et seq.* (Count III); age discrimination under the Arizona

15  Civil Rights Act ("ACRA"), A.R.S. § 41-1461 *et seq.* (Count IV); retaliation under the

16  ADEA (Count V); and retaliation under the ACRA (Count VI).

17  Discussion

18      The defendant seeks to have the Court dismiss all of the claims in the SAC

19  with prejudice pursuant to Fed.R.Civ.P. 12(b)(6).[11]  While the SAC need not state

20  detailed factual allegations in order to survive a Rule 12(b)(6) motion to dismiss, it

21  ─────────────────
        [11]

22      The defendant also argues at some length in its reply that its motion to
23  dismiss should be granted on the independent ground that the plaintiff filed his
    response to the motion two days after the deadline set forth in LRCiv 7.2(c).  While
24  the Court does not approve of the plaintiff filing a late response without an
    accompanying motion for an extension of time, the minimal delay which was non-
25  prejudicial to the defendant is simply too insignificant a basis on which to grant a
26  motion to dismiss.

1  must do more than offer "labels and conclusions" or "a formulaic recitation of the

2  elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555

3  (2007).  Rather, it must contain "sufficient factual matter, accepted as true, to state

4  a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949

5  (2009) (some internal quotation marks omitted), and facial plausibility is present

6  when the plaintiff pleads factual content, as opposed to legal conclusions, that allows

7  a court to draw the reasonable inference that the defendant is liable for the alleged

8  misconduct. *Id.* Dismissal is appropriate under Rule 12(b)(6) if the pleaded facts are

9  merely consistent with the defendant's liability because such allegations do not

10  suffice "to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at

11  555; Iqbal, 129 S.Ct. at 1949-50 ("But where the well-pleaded facts do not permit the

12  court to infer more than the mere possibility of misconduct, the complaint has alleged

13  - but it has not shown - that the pleader is entitled to relief.") (internal quotation

14  marks and brackets omitted).

15  Count I - Intentional Infliction of Emotional Distress

16  As the Court noted in its previous opinion, one of the elements of an

17  intentional infliction of emotional distress ("IIED") claim under Arizona law is that the

18  defendant must have engaged in extreme and outrageous conduct, *i.e.*, conduct "so

19  outrageous in character, and so extreme in degree, as to go beyond all possible

20  bounds of decency, and to be regarded as atrocious and utterly intolerable in a

21  civilized community[.]" Craig v. M & O Agencies, Inc., 496 F.3d 1047, 1058 (9th

22  Cir.2007).  When considering a motion to dismiss an Arizona IIED claim, the Court

23  may determine whether the alleged conduct by the defendant rises to this level.

24  Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1046 (9th Cir.2011).

25  In making that determination, the Court must keep in mind that Arizona law

26

1    recognizes that it is "extremely rare to find conduct in the employment context that

2    will rise to the level of outrageous necessary to provide a basis for recovery for the

3    tort of intentional infliction of emotional distress," Mintz v. Bell Atlantic Systems

4    Leasing Int'l, 905 P.2d 559, 564 (Ariz.App.1995), and that such liability does not

5    arise for conduct that amounts to "mere insults, threats, annoyances, petty

6    oppressions, or other trivialities." Craig, at 1059 (citing Restatement 2d of Torts, §

7    46, comment (d).)

8         The Court dismissed the previous IIED claim because the relevant

9    background facts set forth in the FAC fell "far short of describing conduct on the

10   defendant's part that is plausibly so extreme or outrageous as to go beyond all

11   possible bounds of decency." 2012 WL 933011, at *5.  The defendant argues that

12   the factual additions made in the SAC do not cure the IIED claim's infirmities in this

13   regard and the Court agrees.  The plaintiff's contention is that the SAC contains new

14   factual allegations indicating that he was singled out from other coworkers routinely,

15   that he had additional requirements that other coworkers did not and was

16   reprimanded for actions that coworkers did without being reprimanded, that he was

17   prevented from enjoying social breaks with coworkers, and that he reported his

18   concerns to HRD which produced no results.  But even if the well-pled allegations

19   in the SAC, construed in the plaintiff's favor, can plausibly be interpreted as showing

20   that this cited conduct occurred routinely, and the Court does not believe that they

21   can, the Court concludes as a matter of law that the cited conduct is not so

22   outrageous or atrocious as to go "beyond all possible bounds of decency."

23        Furthermore, the IIED claim is insufficient because the relevant factual

24   allegations do not show a facial plausibility that the plaintiff suffered the required

25   severe emotional distress as a result of the defendant's conduct.  While the IIED

26

1  claim in the SAC alleges that the plaintiff "suffered severe and debilitating emotional

2  distress, humiliation, and degradation" as a result of the defendant's actions, there

3  are no supporting factual enhancements regarding emotional distress that are

4  sufficient to nudge the plaintiff's claim "across the line from conceivable to plausible"

5  as is required. Twombly, 550 U.S. at 570; see also, Iqbal, 129 S.Ct. at 1949

6  ("Threadbare recitals of the elements of a cause of action, supported by mere

7  conclusory statements, do not suffice.")   The Court will dismiss the IIED claim in the

8  SAC without leave to amend.

9           Count II - Negligent Infliction of Emotional Distress

10          In its previous opinion, the Court noted that under Arizona law a claim for

11  negligent infliction of emotional distress ("NIED") cannot be supported by mere

12  emotional distress, and that a plaintiff's shock and mental anguish must instead be

13  manifested as a physical injury, Keck v. Jackson, 593 P.2d 668, 669-70 (Ariz.1979),

14  or by substantial long-term emotional disturbance if unaccompanied by physical

15  injury. Harris v. Maricopa County Superior Court, 631 F.3d 963, 978 (9th Cir.2011).

16  The Court dismissed the NIED claim in the FAC using the Twombly/Iqbal standard

17  because the claim was missing "sufficient factual matter plausibly showing that the

18  defendant's conduct caused physical injury to the plaintiff that constituted something

19  more than transitory physical phenomena, or that resulted in substantial, long-term

20  emotional disturbance." 2012 WL 933011, at *5.

21          As the defendant correctly states, the NIED claim in the SAC is inexplicably

22  even weaker than it was in the FAC because the plaintiff removed from the SAC the

23  one paragraph from the FAC that even attempted to supply a factual basis, however

24  conclusory, for the physical injury or illness he allegedly suffered as a result of the

25

26

1   defendant's actions[12]; the SAC now contains no factual support for the allegation in

2   paragraph 31 of the NIED claim that "Defendant's negligence caused Plaintiff

3   emotional distress, humiliation, and degradation, and as a result of this emotional

4   harm, Plaintiff suffered physical injury or illness."  While the plaintiff argues that the

5   NIED claim is sufficient because the SAC sets forth a pattern of discrimination that

6   manifested itself as a mental disturbance in that it alleges that he was unlawfully

7   singled out and reprimanded without cause and was prevented from joining social

8   gatherings and made fun of during work training sessions, the Court disagrees.

9   Paragraph 31, the only allegation related to physical injury or illness, is nothing more

10  than a mere naked assertion devoid of further factual enhancement that the

11  Supreme Court condemned as insufficient in Twombly.  The Court will dismiss the

12  NIED claim without leave to amend.

13          Counts III and Count IV - Age Discrimination[13]

14          The Court dismissed the ADEA/ACRA age discrimination claims in the FAC,

15  both of which are based on a disparate treatment theory of discrimination, because

16  the relevant factual allegations, viewed in the plaintiff's favor, merely suggested the

17  possibility that the plaintiff's termination was age-related and that was insufficient

18  under the Twombly/Iqbal standard. 2012 WL at 933011, at *3.

19

20          [12]

21          Paragraph 14 of the FAC had alleged that "[f]requently, Plaintiff was
    spoken to negatively in front of other employees resulting in his embarrassment,
22  extreme discomfort, and high stress. During this period, Plaintiff's doctor prescribed
    him stress relief and anxiety medications and instructed him to remove stress from
23  his life caused by his working conditions."

24          [13]
          As the Court noted in its previous opinion, the Court's resolution of the
25  discrimination and retaliation claims will not differentiate between the federal claims
    and the state claims because the parties have not done so in their memoranda.
26

1    While the SAC does not plead a prima facie case of age discrimination[14], an

2    ADEA plaintiff is not required to plead specific facts that establish all of the elements

3    of a prima facie case in order to survive a motion to dismiss.  Swierkiewicz v.

4    Sorema N.A., 534 U.S. 506, 508 (2002) (Court held that "a complaint in an

5    employment discrimination lawsuit [need] not contain specific facts establishing a

6    prima facie case of discrimination under the framework set forth in McDonnell

7    Douglas Corp. v. Green, 411 U.S. 792 (1973)."); *accord,* Sheppard v. David Evans

8    and Assoc., __ F.3d __, 2012 WL 3983909, at *3 n.2 (9th Cir. September 12, 2012).

9    The defendants argue that the new factual allegations in the SAC are insufficient to

10   raise a plausible inference that the plaintiff was terminated due to his age.

11        The plaintiff added some factual allegations to the SAC that are related to his

12

13        14

14        In order to allege a prima facie case of termination-based age
     discrimination under the ADEA, a plaintiff must allege in the complaint that he was
15   at least forty years old, that he was performing his job satisfactorily, that he was
     discharged, and that he was either replaced by a substantially younger employee
16   with equal or inferior qualifications or was discharged under circumstances otherwise
     giving rise to an inference of age discrimination. Diaz v. Eagle Produce Ltd.
17   Partnership, 521 F.3d 1201, 1207 (9th Cir.2008). The Supreme Court has now made
     clear that a plaintiff bringing an ADEA claim must establish that age was the "but-for"
18   cause of the employer's adverse action. Gross v. FBL Financial Services, Inc., 557
19   U.S. 167, 129 S.Ct. 2343, 2351 (2009).
20        The ADEA/ACRA discrimination claims allege in relevant part that:

21        Plaintiff is over the age of 40 and was well qualified and capable of
          performing his job duties with the Defendant.  During the course of his
22        employment Plaintiff suffered adverse employment actions, including
          reprimands and harassment based on his age and ultimately was
23        terminated.  Following his termination his position was either not filled
24        or Plaintiff was replaced with a younger individual.
          Plaintiff was the only individual working for Defendant in his
25        capacity over the age of 40 and was the only employee subjected to
26        these employment actions. (Paragraphs 37-38 and 45-46 of the SAC).

1   age discrimination claims, such as that the plaintiff was the only member of his group

2   who was over forty, that supervisors on two occasions referred to his ideas as "old

3   school", and that he received two written reprimands for conduct that younger

4   members of his team also engaged in without reprimands.  The Court concludes that

5   the well-plead facts of the SAC, viewed in the plaintiff's favor, are very minimally

6   sufficient to plausibly suggest that the plaintiff is entitled to relief for age

7   discrimination based on circumstantial evidence of discrimination. *See* Sheppard,

8   2012 WL 3983909, at 2-3.   While it may very well be that the plaintiff's age

9   discrimination claims are not meritorious enough to survive a summary judgment

10  motion, the fact "that a recovery is very remote and unlikely" is not the standard on

11  a motion to dismiss. Twombly, 550 U.S. at 556.

12          Counts V and VI - Retaliation

13          In its previous opinion, the Court dismissed the ADEA/ACRA retaliation claims

14  in the FAC because the factual allegations relevant to them were not sufficient to

15  suggest a plausible causal link between the plaintiff's protective activity of

16  complaining to HRD about age discrimination on December 12, 2008 and his

17  termination from employment on December 29, 2009, some 54 weeks later. 2012

18  WL 933011, at *4.

19          The defendant argues that the retaliations claims are still not facially plausible

20  because the factual additions to the SAC remain insufficient to elevate the retaliation

21  claims beyond a speculative level.[15]   The plaintiff argues that the SAC alleges

22

23          [15]
          In order to establish a claim of retaliation under the ADEA, 29 U.S.C.
24  § 623(d), a plaintiff must show that he engaged in statutorily protected activity,  that
    he was discharged or suffered some other adverse employee decision, and that
25  there is a casual connection between the two. O'Day v. McDonnell Douglas
    Helicopter Co., 79 F.3d 756, 763 (9th Cir.1996).
26

- 11 -

1    sufficient evidence "to suggest beyond mere speculation that he was terminated as

2    a result of his complaints to Defendant's HRD.  Not only did Plaintiff notify Defendant

3    of his belief Age Discrimination was occurring through his 12 points of discrimination,

4    but as he continued to face problems at the workplace he continued to report the

5    issues to Defendant's HRD, which he alleges in his SAC."

6        The plaintiff added a new factual allegation in the SAC, relevant to the

7    termination-based retaliation claims[16], that states that he reported to HRD and the

8    defendant's management the September, 2009 incident involving supervisor Doty,

9    wherein she ordered him alone back to work while he and his teammates were

10   socializing and enjoying a donut break, and that the ensuing investigation

11   determined that Doty was wrong for singling out the plaintiff.  Viewing this allegation

12   in the plaintiff's favor as it must, the Court construes the SAC as alleging that the

13   plaintiff made a complaint of age discrimination to HRD and the defendant's

14   management in September of 2009, some three months before the plaintiff was

15   terminated.  While the Court agrees with the defendant that there are significant

16   factual gaps in the SAC linking the two events, the plaintiff's termination was

17

18       The ADEA/ACRA retaliation claims in the SAC allege that "Plaintiff
19   participated in protected activity by reporting potential Age Discrimination to
     Defendant," that "Plaintiff suffered and adverse employment action as a result of
20   participating in protected activity," and that "Plaintiff suffered damages as a result of
21   Defendant's actions." (Paragraphs 52-54 and 58-60 of the SAC).

         [16]
22       To the extent that the plaintiff may be including his two written reprimands
23   in October and November of 2009 as adverse actions for purposes of his retaliation
     claims, the Court agrees with the defendant that there is no plausible causality as
24   to the reprimands, even if they qualify as adverse actions, because there are no
     factual allegations in the SAC from which the Court can infer that the unspecified
25   person or persons who reprimanded the plaintiff knew anything at all about his
26   complaints of age discrimination to HRD.

1  temporarily proximate to the plaintiff's last HRD complaint. *See* Lacey v. Maricopa

2  County, __ F.3d __, 2012 WL 371159, at *17 (9th Cir. Aug. 29, 2012)(en banc) (Court

3  noted that while Iqbal demands more of a plaintiff than bare notice pleading, it does

4  not require courts "to flyspeck complaints looking for any gap in the facts.")  The

5  Court concludes that the allegations in the SAC are very marginally sufficient to

6  nudge the retaliation claims "across the line from conceivable to plausible."

7  Twombly, 550 U.S. at 570.  Therefore,

8        IT IS ORDERED that the defendant AmeriCredit Financial Services, Inc.'s`

9  Motion to Dismiss Second Amended Complaint (Doc. 16) is granted in part and is

10  denied in part.  The motion is granted solely to the extent that Count I (Intentional

11  Infliction of Emotional Distress) and Count II (Negligent Infliction of Emotional

12  Distress) of the Second Amended Complaint are dismissed pursuant to Fed.R.Civ.P.

13  12(b)(6) without leave to amend, and it is denied in all other respects.

14        IT IS FURTHER ORDERED that the parties shall file their Joint Case

15  Management Report in full compliance with the Order Setting Scheduling

16  Conference (Doc. 15) no later than **December 3, 2012**.

17        IT IS FURTHER ORDERED that the Scheduling Conference shall be held on

18  **Monday, December 17, 2012, at 11:15 a.m.** in Courtroom 601.

19        DATED this 16th day of October, 2012.

20

21

Paul G. Rosenblatt

22  United States District Judge

23

24

25

26